UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CIARA BRYANT** | **CASE NO. 6:25-CV-00549** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **SCHOOL BOARD OF ST LANDRY PARISH ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Pending before the Court is the Motion for Judgment on the Pleadings (Rec. Doc. 12) filed on behalf of Opelousas High School and the St. Landry Parish School Board. Plaintiff failed to file an opposition. The motion was referred to this Court for report and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. For the following reasons, it is recommended that Moving Defendants' Motion for Judgment on the Pleadings (*Id.*) be GRANTED.

### Facts and Procedural History

Plaintiff filed this 42 U.S.C. § 1983 action on behalf of her minor child, J.B., on April 25, 2025, against Opelousas High School, the City of Opelousas, St. Landry Parish School Board, and Officer Ka'Leah Dorsey after "Officer Ka'Leah Dorsey discharged a taser into the face of J.B." during a multiple-student altercation at Opelousas High School on January 27, 2025. (Rec. Doc. 1, ¶ 11). Plaintiff asserts claims under the Fourth and Fourteenth Amendments to the United States

Constitution. (*Id.* at ¶¶ 24-40). Plaintiff also asserts state law claims for, *inter alia*, negligence, assault, battery, false imprisonment, and intentional infliction of emotional distress. (*Id.* at ¶¶ 41-62). Plaintiff requests, in part, compensatory, special, and punitive damages. (*Id.* at p. 19, ¶¶ D & E). Moving Defendants assert that "all claims against Opelousas High School must be dismissed with prejudice because the school lacks the capacity to sue or be sued under federal or state law. The claims alleged against the School Board must also be dismissed because the Complaint fails to state a claim upon which relief can be granted, and the legal theories asserted are fundamentally unsupported by well-pleaded facts or applicable law." (Rec. Doc. 12-1, p. 2).

## Law and Analysis

### I. Law applicable to Rule 12(c)

A motion for judgment on the pleadings under Rule 12(c) is analogous to a Rule 12(b)(6) motion to dismiss:

> A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir.2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 n. 8 (5th Cir.2002)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes,* 278 F.3d at 420 (internal quotations omitted). Although we must accept the factual allegations in the pleadings as true, *id.,* a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

*Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008).

## II. <u>Opelousas High School</u>

The Fed.R.Civ.P. Rule 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." As such, Louisiana law governs whether the Opelousas High School has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. In *Roberts v. Sewerage & Water Board of New Orleans*, the Louisiana Supreme Court explained that "a local government unit may be deemed to be a juridical person separate and distinct from other government entities [] when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity." *Roberts v. Sewerage & Water Board of New Orleans,* 634 So. 2d 341, 347 (La. 1994). Thus, where there is no constitutional or statutory authority for the entity to sue or be sued, that entity is without capacity under the *Roberts* analysis. *City Council of Lafayette v. Bowen*, 649 So.2d 611, 613-616 (La.App. 3rd Cir.1994), writ denied, 650 So.2d 244 (La. 1995).

Under Louisiana law, parish school boards constitute "bodies corporate with power to sue" and be sued. La.Rev.Stat. 17:51. Further, parish school boards "have

3

much discretion to determine the number of schools; location of the schools; number of teachers employed; teachers' salaries; and adopt policies and procedures for the superintendent to uphold." *Hamilton v. City of Natchitoches,* 903 So.2d 1247, 1250 (La.Ct.App.2005). "With such extensive management carried out by the Parish School Board, there is no indication that the School System functions independently or acts as a separate unit." *Spears v. Jefferson Par. Pub. Sch. Sys.*, 2013 WL 1868456, at *2 (E.D. La. May 2, 2013). Plaintiff even notes in her Complaint, "Opelousas High School is under the management and control of the St. Landry Parish School Board." (Rec. Doc. 1, ¶ 1). Lastly, there is no statutory authority designating school systems or individual schools as corporate bodies with the power to sue or be sued.

Under these guidelines (Fed. R. Civ. P. 17(b) and La. Civ. Code Ann. Art. 24), the Court finds that Opelousas High School is a non-juridical entity and is not capable of being sued. Rather, the affiliated parish school board is the appropriate entity against which to bring suit. Accordingly, it is recommended that Opelousas High School be dismissed from this action.

### III. St. Landry Parish School Board

#### A. 42 U.S.C. § 1983

The School Board may not be held liable under Section 1983 on a theory of vicarious liability. *Hicks-Fields v. Harris Cty., Texas,* 860 F.3d 803, 808 (5th Cir.

2017). It may, however, be liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) when the allegedly unconstitutional conduct at issue is directly attributable to the municipality through some sort of official action. To state a Section 1983 *Monell* claim, a plaintiff must allege facts demonstrating that (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force for the violation of a constitutional right. *Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020). Official policies may exist in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*.

### i. Official Policy

For the reasons explained above, the Court will consider Plaintiff's allegations against Opelousas High School as against the St. Landry Parish School Board ("School Board."). In her Second Cause of Action (Unconstitutional Policy, Custom, or Procedure in Violation of Civil Rights, 42 U.S.C. § 1983), Plaintiff alleges, in relevant part, that Opelousas High School has "a *de facto* policy, custom, or practice of deploying and stationing police officers at said high school without adequate training on responding to situations involving children" and permit "police officers stationed at Opelousas High School to use lethal and unnecessary force on children." (Rec. Doc. 1, ¶ 32). Specific to the present case, Plaintiff alleges that

5

"the altercation was being subdued by the faculty of Opelousas High School. However, Opelousas High School dispatched their campus officers to the location of the altercation." (*Id.* at ¶ 7).

Other than her conclusory allegation that the school has a "a *de facto* policy, custom, or practice," Plaintiff does not allege any specific, official policy or custom of the School Board to support liability. Further, Plaintiff also does not allege a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. To plead a *Monell* claim on the basis of a widespread practice, the plaintiff must plead facts showing "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Specifically, a plaintiff "must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020). Plaintiff has not done so, nor has Plaintiff responded to this Motion or requested an opportunity to amend. Accordingly, the Court will turn to the other 1983 liability theories raised by Plaintiff.

### ii. Failure to Intervene

Plaintiff also contends that the School Board is:

> …responsible for ensuring the safety of students and for establishing policies governing interactions with law enforcement. The school failed to adequately monitor or supervise the actions of the police officers on its premises and failed to intervene or prevent the officer from using excessive force. The school's failure to intervene, or to take corrective

6

actions, constitutes a violation of Plaintiff's Fourteenth Amendment right to due process and protection from excessive force.

(Rec. Doc. 1, ¶ 33).

The Fifth Circuit has held that

An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act. Bystander liability requires more than mere presence in the vicinity of the violation; "we also consider whether an officer 'acquiesced in' the alleged constitutional violation."

*Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020)(internal citations omitted).

Here, Plaintiff has not alleged, nor provided any factual support for this Court to conclude, that school officials are considered "fellow officers" to the police officers providing security at the school. Even if Plaintiff alleged such, there are no allegations that school officials were present at the scene after calling for aid, had a reasonable opportunity to prevent the harm, and chose not to prevent said harm. Further, as discussed above, the School Board can only be held vicariously liable for the actions of school officials if they acted pursuant to an official policy, promulgated by the municipal policymaker, and said policy was the moving force for the violation of a constitutional right. Plaintiff has failed to plead such. Accordingly, Plaintiff's failure to intervene theory also fails.

### iii. <u>Conspiracy</u>

In her Third Cause of Action (Conspiracy, Deliberate Indifference to Serious Medical Needs by School Officials, and Retaliation in Violation of 42 U.S.C. § 1983, 1988), Plaintiff alleges that Defendants "acted as described herein, with the agreement, permission, and approval of each other to violate the Civil Rights of [Minor J.B], to suppress [Minor J.B.] and to retaliate against the student. (*Id*. at ¶ 36). Specifically, Plaintiff maintains that Opelousas High school, "through an expulsion effort, through a delay in medical treatment, and an attempted concealment of wrongdoing the Defendants acted in cohort of oppress J.B. and to retaliate against him. The conduct described constitutes Conspiracy, Deliberate Indifference, and Retaliation in of Violation of 42 U.S.C 1983." (*Id*. at ¶ 37). According to Plaintiff, "[f]ollowing this incident, Opelousas High School initiated disciplinary proceedings against J.B., including an attempt to expel him based on the false allegation that he was involved in the physical altercation. These actions were part of a coordinated effort to conceal the misconduct of officer, shift blame onto J.B. and to insulate the school and its staff from liability." (*Id*. at ¶ 15).

"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).

Again, Plaintiff only asserts legal conclusions that Defendants conspired to deprive J.B. of his civil rights, but no well-pleaded facts supporting those conclusions. "[N]aked allegations or legal conclusions masquerading as something more will not thwart dismissal. As pleaded, [Plaintiff's] conspiracy-to-violate-§ 1983 allegations, unsupported by sufficient factual content, are insufficient to state a plausible claim for relief." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

### iv. Deliberate Indifference

"Deliberate indifference" is "a stringent standard of fault," one "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 536 (S.D. Tex. 2020)(citing *Connick v. Thompson,* 563 U.S. 51, 61 (2011). Here, Plaintiff does not bring suit against an individual school official. A municipality is only considered to be deliberately indifferent when they are on actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights, and they choose to retain that program. *Connick*, 563 U.S. at 61. A municipality's deliberate indifference typically requires a plaintiff to allege a pattern of similar constitutional violations by untrained employees. *Id.* at 62. A plaintiff must generally show that, given the duties assigned to specific officers or employees, "the need for more or different training is obvious, and the inadequacy is likely to result in the violation of constitutional rights." *City of Canton, Ohio v. Harris*, 489 U.S.

9

378, 390 (1989). Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Connick,* 563 U.S. at 62.

Here, Plaintiff alleges that the school has "a *de facto* policy, custom, or practice of deploying and stationing police officers at said high school without adequate training on responding to situations involving children" and permit "police officers stationed at Opelousas High School to use lethal and unnecessary force on children." (Rec. Doc. 1, ¶ 32). Plaintiff also alleges "deliberate indifference to serious medical needs by school officials." Specifically, Plaintiff asserts that that "J.B. was not provided with any medical assessment or treatment from the school's faculty or nursing staff" and that his "mother had to personally arrive at the school to transport him to the hospital, where he received the necessary treatment, including the removal of the taser barbs from his eye." (*Id.* at ¶¶ 13-14).

Once again, Plaintiff does not allege any specific, official policy or custom of the School Board to support liability. Plaintiff also fails to allege specific facts about the actual training protocols of school officials and how they relate to the on-campus police or students' medical care following an incident, nor does she describe any deficiencies. *See Taylor*, 488 F.Supp.3d at 536 (where the plaintiff failed to identify specific training protocols and how they were inadequate, he failed to sufficiently

plead a claim for failure to train); *see also Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). Accordingly, Plaintiff's deliberate indifference claim fails.

### v. Retaliation

Plaintiff alleges that Opelousas High school, "through an expulsion effort, through a delay in medical treatment, and an attempted concealment of wrongdoing the Defendants acted in cohort of oppress J.B. and to retaliate against him. The conduct described constitutes Conspiracy, Deliberate Indifference, and Retaliation in of Violation of 42 U.S.C 1983." (Rec. Doc. 1, ¶ 37). A retaliation claim under § 1983 generally requires a plaintiff to show (1) a specific constitutional right, (2) the defendant's intent to retaliate against the plaintiff for exercising that right, (3) an adverse action against the plaintiff, and (4) causation. *See Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006)(prisoner), *McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007)(Title VII), and *Beattie v. Madison Cnty. Sch. Dist.,* 254 F.3d 595 (5th Cir. 2001)(First Amendment).

Here, Plaintiff does not allege any constitutionally protected action J.B. took that caused the school to allegedly retaliate; thus, Plaintiff has failed to plead a retaliation cause of action.

### B. State Law Claims

Plaintiff also asserts state law claims for negligence, assault, battery, false imprisonment, and intentional infliction of emotional distress. (Rec. Doc. 1, ¶¶ 41-

11

62). The only state law claims that are alleged against the school and/or School Board are negligence and intentional infliction of emotional distress.[1]

### i. **Negligence**

Per Plaintiff, Defendant Dorsey and Opelousas High School caused J.B. "to be physically injured through [their] failure to properly assess the mildness of the situation before requesting officers and deploying a taser. In performing these acts and omissions Defendants breached its care of duty to [] J.B." (*Id*. at ¶ 44).

To determine whether a plaintiff should recover on a negligence claim, Louisiana Courts employ a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. And Development*, 916 So. 2d 87, 101 (La. 2005). Under the duty risk analysis, Plaintiff must establish (1) proof that the defendant had a duty to conform his conduct to a specific standard, (2) proof that the defendant's conduct failed to conform to the appropriate standard, (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and (5) proof of actual damages. *Id*.

In the context of schools, Louisiana courts have held:

Schools and school boards, through their employees or teachers, owe a duty of reasonable supervision over students. The supervision required is reasonable, competent supervision appropriate to the age of the

---

[1] The assault, battery, and false imprisonment claims, as alleged, are against the police officer(s).

>children and the attendant circumstances. However, this duty does not make the school or school board the insurer of the safety of the children. Constant supervision of all students is not possible or required for employees or teachers to discharge their duty to provide adequate supervision. Before liability can be imposed upon a school or school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. Further, the unreasonable risk of injury must be foreseeable, constructively or actually known, and preventable, if the requisite degree of supervision had been exercised.

*Doe v. E. Baton Rouge Par. Sch. Bd.*, 2006-1966 (La. App. 1 Cir. 12/21/07), 978 So. 2d 426, 433, writ denied, 2008-0189 (La. 3/28/08), 978 So. 2d 306 (internal citations omitted).

Here, Plaintiff alleges that school officials negligently dispatched on-campus police officers by failing to properly assess the mildness of the situation. (Rec. Doc. 1, ¶ 44). While it is clear that school officials have a duty of reasonable supervision over the students, there are no allegations or evidence to support that school officials knew, or should have known, that on-campus officers would deploy a taser or use alleged excessive force. Compare this to *Doe* where "the record indicate[d] that there had been numerous assaults at the transfer point in the five years immediately preceding the incident." *Doe*, 978 So. 2d at 433. Plaintiff also failed to plead a causal connection between the School Board and the training of on-campus police. Accordingly, Plaintiff's negligence claim falls short.

## ii. Intentional Infliction of Emotional Distress

Plaintiff alleges "Defendants committed the intentional infliction of emotional distress upon [] J.B." by their "subsequent actions and retaliation efforts committed to oppress him." (Rec. Doc. 1, ¶ 61). Per Plaintiff, J.B.'s "emotional distress includes but is not limited to anxiety, fear, humiliation, embarrassment, and emotional trauma." (*Id.*).

Under Louisiana law, to state a claim for intentional infliction of emotional distress, a Plaintiff must show: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).

> A Louisiana court has explained that "[o]utrageous conduct is a nebulous concept, as it does not refer to any specific type of conduct." In order to determine whether conduct is extreme and outrageous, we ask whether, as a matter of law, the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

*James v. Woods*, 899 F.3d 404, 411 (5th Cir. 2018)(internal citations omitted).

Here, Plaintiff alleges that "J.B. was not provided with any medical assessment or treatment from the school's faculty or nursing staff" and that his "mother had to personally arrive at the school to transport him to the hospital, where

14

he received the necessary treatment, including the removal of the taser barbs from his eye." (Rec. Doc. 1, ¶¶ 13-14). Plaintiff further alleges that "Opelousas High School initiated disciplinary proceedings against J.B., including an attempt to expel him based on the false allegation that he was involved in the physical altercation." (*Id*. at ¶ 15). The Court finds that these allegations fail to show that the School Board or school officials "intended to inflict severe emotional distress upon [him] through their alleged offensive conduct." *Cubas v. St. James Par. Sch. Bd.*, 2021 WL 6196977, at *20 (E.D. La. Dec. 30, 2021). "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like," and the Court finds that Plaintiff's allegations fall far short of this standard. *White v. Monsanto Co.*, 585 So. 2d 1205, 1210 (La. 1991).

### IV. Leave to Amend

"District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, Plaintiff is represented by counsel. Plaintiff has not requested leave to amend, nor was an opposition filed to the present motion. Accordingly, the Court can only assume that "[Plaintiff] has

already pleaded [her] best case." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

## CONCLUSION

For the reasons discussed herein, it is recommended that Moving Defendants' Motion for Judgment on the Pleadings (Rec. Doc. 12) be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 6th day of November, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE